# UNITED STATES DISTRICT COURT
### District of Kansas
### (Kansas City Docket)

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**                                    **CASE NO.**  23-20063-DDC-ADM

**MICHAEL GRANT CLINESMITH**
**and**
**RICHARD WAYNE MUELLER,**

**Defendants.**

# INDICTMENT

**THE GRAND JURY CHARGES**:

At times relevant to the charges in this Indictment:

### INTRODUCTION

1.      Defendant MICHAEL GRANT CLINESMITH was a resident of Kansas.  CLINESMITH was employed by Company 1 as a gage engineer at the United States Department of Energy's Kansas City National Security Campus ("KCNSC") operated by Company 1.

1

2.      Defendant RICHARD WAYNE MUELLER was a resident of Missouri.  MUELLER was in charge of the gage department at Subcontractor 1, a machining and tooling shop located in St. Louis, Missouri that served as a subcontractor to Company 1 at KCNSC.

3.      The KCNSC was operated by Company 1 on behalf of the Department of Energy's National Nuclear Security Administration ("NNSA").  Company 1, through its work at KCNSC, was responsible for manufacturing non-nuclear components that went into the nation's nuclear weapon stockpile.  Part of Company 1's work included the procurement of gages—mechanical devices that were specially designed and manufactured to measure the components of nuclear weapon products to ensure the end products met design standards.

4.      Gages played a critical role in the nuclear weapon development process. They enabled KCNSC to quickly and accurately verify that components met the NNSA's requirements and could be incorporated into nuclear weapons.  Without the use of gages, the KCNSC could not meet critical delivery schedules in support of the nation's nuclear security complex.

5.      Gage engineers worked with other product engineers and designers at KCNSC to determine whether a gage was needed to measure a certain mechanical or electrical component of a nuclear weapon.  If a gage was needed, gage engineers, such as CLINESMITH, were responsible for designing the gage.  Alternatively, the

gage design could be sourced from an outside vendor.  Gage engineers were also responsible for evaluating completed gages to assess whether they could accurately and efficiently measure a given component.

6.     Accordingly, gage engineers worked closely with both internal customers and external vendors and had intimate knowledge of the specific gage needs of their internal customers as well as the capabilities of external vendors to meet those needs.

7.     Gage engineers worked with Company 1 Buyers—employees responsible for purchasing gages from vendors—to place purchase orders with vendors for gage-design and -build subcontracts.  Gage engineers created the initial, internal request for a gage that would trigger a Request for Proposal (RFP) to one or more vendors to design and build the gage.

8.     As part of this process, gage engineers, including CLINESMITH, could and did recommend their preferred vendor for the gage.  In addition to evaluating vendors based on cost, delivery timeline, and past performance, Buyers relied on gage engineers' recommendations when selecting a vendor.

9.     Typically, gage RFPs were sent to at least two vendors in an attempt to ensure that the solicitation process was competitive and fair.  Absent exceptional circumstances, Buyers would include the gage engineer's preferred vendor as one of the two sources.

10.    In order to "single source" a gage from only one specific vendor, a Buyer had to provide a cost fairness evaluation and, for purchase orders of $250,000 or more, additional justifications.  Buyers relied on gage engineers to provide them with cost fairness evaluations for vendors' bids and to provide additional justifications for single-sourcing the gage from a specific vendor.

11.    Gage engineers were also responsible for evaluating and approving vendors' gage designs.  Buyers relied on gage engineers' approvals of gage designs to release payment for the designs to the vendors.

12.    During the relevant time period, CLINESMITH was an experienced and long-tenured Company 1 gage engineer.  Company 1 relied on CLINESMITH's judgment, evaluation, and recommendation of gage vendors.  Company 1 also relied on CLINESMITH to assess the fairness of gage vendors' bids and approve gage designs submitted by vendors.  For these and other reasons, CLINESMITH exercised significant control and influence over the gage procurement process.

13.    CLINESMITH owed a fiduciary duty to his employer, Company 1.

### THE SCHEME TO DEFRAUD

### Overview of the Scheme to Defraud

14.    From at least 2011 through at least in and around January 2021, CLINESMITH and MUELLER, together with others known and unknown to the Grand Jury, within the District of Kansas and elsewhere, agreed and schemed to

4

defraud Company 1 by obtaining its money and property by means of materially false and fraudulent pretenses, representations, and promises, and by depriving Company 1 of its intangible right to the honest services of CLINESMITH.

## Purpose of the Scheme to Defraud

15.     The purpose of the scheme was for the defendants, CLINESMITH and MUELLER, to enrich themselves and Subcontractor 1 by: (i) inducing Company 1 to award gage subcontracts to Subcontractor 1 by means of false and fraudulent pretenses and representations; and (ii) paying CLINESMITH bribes and kickbacks to induce him to award and cause others to award gage subcontracts to Subcontractor 1.

## Description of the Scheme to Defraud

### *False and Fraudulent Pretenses and Representations to Induce Company 1 to Award Subcontracts to Subcontractor 1*

16.     It was part of the scheme that CLINESMITH and MUELLER obtained Company 1's money and property by means of false and fraudulent pretenses, representations, and promises.

17.     Specifically, CLINESMITH used his position and authority at Company 1 to award and cause others at Company 1 to award gage-design and -build subcontracts to Subcontractor 1 based on false and fraudulent pretenses and representations.

18.    CLINESMITH and MUELLER agreed and schemed to deceive Company 1 employees into thinking they were awarding gage subcontracts to an independent vendor based on objective criteria when, instead, CLINESMITH was using his position and authority at Company 1 to steer those subcontracts to Subcontractor 1 so that Subcontractor 1 would pay CLINESMITH to perform the design work.

19.    CLINESMITH made false and fraudulent representations to Company 1 Buyers about Subcontractor 1's gage-design capabilities to induce them to award gage-design subcontracts to Subcontractor 1.  In reality, CLINESMITH performed design work on gage subcontracts awarded to Subcontractor 1, which MUELLER and CLINESMITH agreed and schemed to pass off as Subcontractor 1's work.

20.    Even for gage-design work that Subcontractor 1 was capable of performing without CLINESMITH's assistance, CLINESMITH and MUELLER agreed and schemed that CLINESMITH would perform and be paid for the design work to enrich CLINESMITH.

21.    It was also part of the scheme to defraud Company 1 that CLINESMITH would provide quotes to MUELLER for Subcontractor 1 to use when bidding on Company 1 gage-design subcontracts.  CLINESMITH would then approve these same quotes as fair and reasonable as part of his job responsibilities as a gage engineer at Company 1.

22.     At times, MUELLER, with CLINESMITH's knowledge and consent, would add an upcharge of several hundred to several thousand dollars to Subcontractor 1's gage-design bids and retain this money despite Subcontractor 1 performing little to no design work under the subcontract.

23.     To induce payment by Company 1, CLINESMITH, in his capacity as a Company 1 gage engineer, approved gage designs that he had surreptitiously created and then agreed and schemed with MUELLER to falsely and fraudulently represent as Subcontractor 1's work.

### *MUELLER Paid CLINESMITH Bribes and Kickbacks*

24.     It was further part of the agreement and scheme that CLINESMITH and MUELLER deprived Company 1 of its right to the honest services of CLINESMITH.

25.     CLINESMITH and MUELLER agreed and schemed that, if MUELLER paid CLINESMITH to perform design work on Company 1 gage subcontracts, CLINESMITH would award and cause others to award those gage-design and -build subcontracts to Subcontractor 1.

26.     It was part of the scheme to defraud Company 1 that CLINESMITH solicited bribes and kickbacks from MUELLER in exchange for awarding and causing others at Company 1 to award gage subcontracts to Subcontractor 1. To further the scheme to defraud, MUELLER then paid CLINESMITH bribes and

kickbacks to induce him to award and cause others at Company 1 to award gage subcontracts to Subcontractor 1.

27.    During the scheme, MUELLER paid and caused others to pay CLINESMITH over $1 million in furtherance of the scheme.

### *Concealment of the Scheme to Defraud*

28.    It was part of the agreement and scheme to defraud Company 1 that CLINESMITH and MUELLER concealed the agreement and scheme from Company 1 so that they could achieve the objective of enriching themselves and Subcontractor 1.

29.    For example, CLINESMITH lied on annual certifications he signed affirming his compliance with Company 1's Code of Business Conduct.  The Code provided that Company 1 employees "generally should avoid doing business with any company in which [they] have a personal financial interest," and that any exceptions to this rule needed to be approved by the Law Department or the Integrity and Compliance Office at Company 1.  CLINESMITH never sought an exception to this rule and instead falsely certified that he had not "engaged in any activity" and had no "interest, which violate[d] the letter or spirit of the Code."

<u>**COUNT 1**</u>

**CONSPIRACY TO COMMIT WIRE FRAUD AND HONEST SERVICES WIRE FRAUD**

**[18 U.S.C. § 1349]**

30.     Paragraphs 1 through 29 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

31.     From at least 2011 through at least in and around January 2021, in the District of Kansas and elsewhere, the defendants,

**MICHAEL GRANT CLINESMITH**

**and**

**RICHARD WAYNE MUELLER,**

did knowingly and intentionally, that is, with the intent to advance the conspiracy, combine, conspire, and agree with other individuals, known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

    a.     wire fraud, that is, to knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the

purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

b.    honest services wire fraud, that is, to knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud and deprive Company 1 of its right to the honest and faithful services of its employee through bribes and kickbacks, transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346.

<u>Purpose of the Conspiracy</u>

32.    Paragraph 15 of this Indictment is realleged and incorporated by reference as though fully set forth herein.

<u>Manner and Means of the Conspiracy</u>

33.    Paragraphs 16 through 29 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2–5
## WIRE FRAUD AND HONEST SERVICES WIRE FRAUD
## [18 U.S.C. §§ 1343 and 1346]

34.     Paragraphs 1 through 29 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

35.     From at least 2011 through at least in and around January 2021, in the District of Kansas and elsewhere, the defendants,

**MICHAEL GRANT CLINESMITH**
**and**
**RICHARD WAYNE MUELLER,**

did knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, and to deprive Company 1 of its right to the honest and faithful services of its employee through bribes and kickbacks, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing the scheme.

Purpose of the Scheme

36.     Paragraph 15 of this Indictment is realleged and incorporated by reference as though fully set forth herein.

<u>Manner and Means of the Scheme</u>

37.     Paragraphs 16 through 29 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

<u>Use of Wires</u>

38.     On or about the dates specified as to each count below, the defendants,

**MICHAEL GRANT CLINESMITH**

**and**

**RICHARD WAYNE MUELLER,**

within the District of Kansas, and elsewhere, together with other individuals, known and unknown to the Grand Jury, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce:

| <u>Count</u> | <u>Approximate Date</u> | <u>Description of Interstate Wire</u> |
|:---:|:---:|---|
| 2 | Jan. 27, 2019 | Email sent by Clinesmith to Mueller attaching a "buyout" list for gage 3r0500-ga1 that included Clinesmith's fees and an overall price estimate for the gage |
| 3 | Aug. 8, 2019 | Email sent by Clinesmith to Mueller providing design costs for an RFP directed to Subcontractor 1 and advising he would provide additional information for Mueller to use for Subcontractor 1's build quote |

| 4 | Nov. 13, 2019 | Email sent by Clinesmith to Mueller attaching an invoice for $12,000 and requesting payment of over $100,000 for multiple gages he had designed and approved |
| 5 | March 8, 2020 | Email sent by Clinesmith to Mueller attaching an invoice for $6,000 for the design of gage GK520 |

All in violation of Title 18, United States Code, Sections 1343 and 1346.

## COUNT 6

### FALSE STATEMENTS AND REPRESENTATIONS
### [18 U.S.C. § 1001(a)(2)]

39.    Paragraphs 1 through 29 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

40.    In or around April 2021, the defendant,

**RICHARD WAYNE MUELLER,**

in a matter within the jurisdiction of the judicial branch and executive branch of the United States government, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation; that is— during a voluntary interview with DOE-OIG Special Agents being conducted pursuant to a federal criminal investigation, MUELLER made the following false statements:

a.    CLINESMITH was involved in only "one or two" projects a year that Subcontractor 1 performed for Company 1;

13

b.    MUELLER did not know anything about the extent of CLINESMITH's responsibilities and authority at Company 1 with respect to approving gage quotes and designs; and

c.    MUELLER never approved the design costs that Subcontractor 1 received from CLINESMITH and submitted to Company 1.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## FORFEITURE NOTICE

1.    The allegations contained in Counts One through Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.    Upon conviction of one or more of the offenses set forth in Counts One through Five of this Indictment, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following:

a.    A forfeiture money judgment against the defendants in an amount equal to the amount of gross proceeds obtained or derived by him from the commission of Counts One through Five.

3.      If any of the property described above, as a result of any act or omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).


A TRUE BILL.


October 18, 2023               s/Foreperson
DATE                         FOREPERSON OF THE GRAND JURY


KATE E. BRUBACHER
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION


By: /s/
ANDREW JACO
Trial Attorney
United States Department of Justice

Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20005
Ph: (202) 640-0953
Email: Andrew.J.Jaco@usdoj.gov

IT IS REQUESTED THAT THE TRIAL BE HELD IN KANSAS CITY, KANSAS

## **PENALTIES**

### **Counts One through Five:  18 U.S.C. §§ 1343, 1346, & 1349**

- Punishable by a term of imprisonment of no more than twenty (20) years.  18 U.S.C. § 1343.

- A term of supervised release of no more than three (3) years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).  In the alternative, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss.  18 U.S.C. § 3571(d).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

- Forfeiture.

### **Count Six:  18 U.S.C. § 1001**

- Punishable by a term of imprisonment of no more than five (5) years.  18 U.S.C. § 1001(a).

- A term of supervised release of no more than three (3) years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).  In the alternative, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss.  18 U.S.C. § 3571(d).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).