IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL GRANT CLINESMITH (01),<br>RICHARD WAYNE MUELLER (02),<br><br>        Defendants. | Case No. 23-20063-DDC |

### MEMORANDUM AND ORDER

*Background*

Defendants Michael Clinesmith and Richard Mueller have filed a joint motion asking the court to approve a subpoena issued under Fed. R. Crim. P. 17(c). Doc. 36. The motion seeks permission for a subpoena duces tecum to issue to Honeywell Federal Manufacturing & Technologies, LLC—FM&T, for short—Mr. Clinesmith's former employer. It would require, if issued, a pretrial production. Defendants broadly assert that they need the designated materials to prepare for trial. *Id.* at 2. The government opposes this request. Doc. 39. Defendants have replied. Doc. 41.

The court convened a hearing on defendants' motion on February 20, 2025, when the parties addressed the merits of defendants' motion. During this hearing, defendants requested leave to file an *ex parte* submission further supporting their request. They theorized that explaining the relevance of the targeted documents would require them to share their trial strategy with their adversary. The government opposed this request. The court sided with defendants, making an oral ruling announced during the February 20 hearing. Defendants since have submitted their *ex parte* filing, and a corrected version of it is designated as Doc. 49 on the

docket. ("Defendants' Amended *Ex Parte* Reply to the Governments' Opposition to Defendant's Motion for a Rule 17(c) Subpoena").

The dispute over this putative subpoena emerges against the larger context of the charges against the two defendants. Summarizing at a high level, the Indictment accuses defendants of conspiring with one another. Specifically, Clinesmith allegedly worked to steer contracts so that FM&T would buy gages manufactured by Mueller's company. *See* Doc. 1 at 3–5. In return, the Indictment alleges, Mueller paid Clinesmith kickbacks as tribute for steering the contracts to his company. *Id.* The Indictment alleges that Clinesmith's employer uses gages to measure components of nuclear weapons and ensure the weapons comply with design standards. *Id.* at 2. The Indictment charges both defendants with conspiracy to commit wire fraud and honest services wire fraud (18 U.S.C. § 1349), and three substantive charges of wire and honest services fraud (18 U.S.C. §§ 1343 and 1346). *See id.* at 9–13. It also charges Mr. Mueller with making false statements and representations (18 U.S.C. § 1001(a)(2)). *See id.* at 13–14.

This Memorandum and Order decides the putative subpoena dispute. Previewing the result, the court grants defendants' motion in part. This Order thus directs the Clerk to issue a subpoena requiring FM&T to produce two categories of documents. The court denies all other requests made by defendants' motion. Below, the court explains the reasons for its rulings.

*Analysis*

**A. Does the government have standing to contest defendants' motion?**

The parties' papers open with a threshold issue: Can the government properly contest defendants' motion? Defendants argue it can't. *See* Doc. 41 at 3–4 ("[T]he government has no technical standing to object to Defendants' request.") Defendants cite two pieces of authority to

2

support their standing argument: "the notes to Rule 17(c)" and *United States v. Reyes*, 162 F.R.D. 468, 471 (S.D.N.Y. 1995). *See id.* at 4.

The court takes defendants' reference to "the notes" to Rule 17 to refer to the Advisory Committee Notes to Rule 17. Those notes—as they apply to subsection (c) of the original Rule 17—opined that this rule was "substantially the same as Rule 45(b) of the Federal Rules of Civil Procedure." Fed. R. Crim. P. 17(c) advisory committee's note to 1944 adoption. Fed. R. Civ. P. 45 doesn't permit an opposing *party* in a civil case to contest issuance of a subpoena. Though they don't ever articulate it, defendants seem to contend the notes suggest neither should Fed. R. Crim. P. 17. *Id.* Defendants' second argument apparently reads *Reyes* to postpone any capacity to dispute a subpoena until after it has issued. *See* Doc. 41 at 4 (citing 162 F.R.D. at 471 ("Thus, a subpoenaed party or one whose legitimate interests are affected by a subpoena may move to quash the subpoena after it issues . . .")). The court doesn't find either authority compelling here. That's so because our court previously tackled this very issue.

In *United States v. Wittig*, 250 F.R.D. 548 (D. Kan. 2008), our court held that the government, "as opposing party, has a right to be heard on a motion" seeking to procure documents under Rule 17(c). *Id.* at 551. While some courts have expressed doubt whether the government possesses standing to object to a requested subpoena duces tecum, *see, e.g.*, *United States v. Love*, 09-cr-00526-MSK, 2010 WL 1931021, at *1 n.5 (D. Colo. May 13, 2010) (comparing cases), the more salient point here is Judge Robinson's broader observation in *Wittig*. Standing or not, Judge Robinson reasoned, the court "has an interest in preserving the proper procedure prescribed by the Rules of Criminal Procedure, irrespective of the desires of the parties." 250 F.R.D. at 551 (quoting *United States v. Beckford*, 964 F. Supp. 1010, 1025 (E.D. Va. 1997) and *United States v. Ferguson*, 37 F.R.D. 6, 8 (D.D.C. 1965)). The court agrees with

*Wittig*'s observation, so it rejects defendants' standing argument. Finally, the court assigns significant value to the adversarial process. The government's perspective likely will assist the court's effort to ensure that its ruling here complies with the Federal Criminal Rules.

With this threshold issue decided, the court now turns to the merits of defendants' motion.

### B. Have defendants shouldered their burdens under Rule 17(c)?

To decide defendants' motion, the court must apply the legal standard governing Rule 17(c) requests. The court's analysis unfolds in three predictable parts: (1) identifying the governing legal standard; (2) summarizing the requests defendants' subpoena would make; and (3) applying (1) to (2). The following discussion tracks this sequence.

#### 1. Controlling Legal Standard

The Tenth Circuit summarized the legal principles governing a request for a Rule 17(c) subpoena in *United States v. Abdush-Shakur*, 465 F.3d 458 (10th Cir. 2006). As the Circuit explained,

> Rule 17(c) [of the Federal Rules of Criminal Procedure] provides that "[a] subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein." Rule 17(c) is "not intended to provide an additional means of discovery," but "to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). A party seeking a subpoena duces tecum under Rule 17(c) must establish:
>
> > (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

4

> *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). Thus, "on appeal from the denial of a Rule 17(c) motion, the movant must show that the subpoenaed document was relevant, admissible, and specific." *United States v. Gonzalez–Acosta*, 989 F.2d 384, 389 (10th Cir. 1993). Failure of one of these elements precludes reversal. *See United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (affirming district court's suppression of a subpoena under Rule 17(c) where defendant arguably established relevance and admissibility, but not specificity).

*Abdush-Shakur*, 465 F.3d at 467 (quotation cleaned up).

On the first rudiment—"evidentiary and relevant"—commentators consistently emphasize that a "subpoena duces tecum is not a discovery device, and the category of materials subject to a subpoena is not so expansive as for materials subject to Rule 16." 25 James W. Moore & Robert M. Cipes, Moore's Federal Practice § 617.08[2] (Daniel R. Coquillette et al. eds.) (3d ed. 2024). But though "Rule 17 is limited to the production of evidentiary materials, a party need not actually use those materials in evidence." *Id.* Instead, a "good faith effort" to secure "evidence is sufficient for a subpoena's demands to fall within the ambit of the Rule." *Id.* Thus, it is "axiomatic that the relevance criterion can be fulfilled if the documents sought would tend to prove a material issue of the prosecution or defense." *Id.* § 617.08[3][b] (citing, among others, decisions by district courts within Tenth Circuit).

On the second requirement—"admissible"—generally speaking "impeachment evidence does not meet the admissibility test and may not be the sole support for a party's demand." *Id.*

The last requirement—limiting Rule 17(c) subpoenas to "specific" requests—is a requirement our court views as "the most difficult hurdle to overcome." *Wittig*, 250 F.R.D. at 552 (citing *United States v. Anderson*, 31 F. Supp. 2d 933, 944 (D. Kan. 1998)). The Tenth Circuit has defined the contours of the specificity requirement this way: "*Nixon* mandates that the party requesting the information identify the item sought and what the item contains, among

5

other things." *Morris*, 287 F.3d at 991.  The Circuit has enforced compliance with this requirement stringently.  For example, in *Morris*, defendant sought a subpoena demanding pretrial production of "all records, documents, reports, telephone logs, etc., surrounding the investigation into the FBI undercover agent's shooting of [defendant] and the agent's entire personnel file."  *Id*.  The Court of Appeals affirmed the district court's decision quashing the subpoena because it wasn't sufficiently specific.  The Circuit explained its rationale this way:

> Courts have held that requests for an entire file are evidence of an impermissible fishing expedition.  *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984); *United States v. Hughes*, 931 F.2d 63 (10th Cir. 1991).  It appears that defense counsel [in *Morris*] attempted to use the Rule 17(c) subpoena for impermissible discovery purposes.  [Defendant's] Rule 17(c) subpoena did not overcome the hurdle of specificity as required by *Nixon*.

*Id.*

At the opposite end of the specificity spectrum, courts have held that narrower requests comport with the specificity requirement.  In *United States v. Romero*, for instance, defendant requested "records about only one vehicle from only one day."  No. 21-cr-00559-JCH, 2023 WL 2614472, at *3 (D.N.M. March 23, 2023).  The district court viewed this request as sufficiently specific because defendant had, "in other words, identified the item sought and what the item contains."  *Id.* (quotation cleaned up).  It thus ruled that the proposed subpoena complied with the Tenth Circuit's ruling in *Morris*, denying the government's motion to quash.

### 2. The Subpoena Defendants Here Aspire to Serve

Defendants here identify the collections of documents they seek.  *See* Doc. 36 at 7–8 (Exhibits "A" and "B").  As filed, the requested subpoena asked for 14 separate categories of documents.  But defendant's *ex parte* filing reports that defendants have withdrawn three categories (#4, 11, and 14).  So, 11 categories of documents remain as targets of the putative

subpoena. Those 11 requests seek broad categories of documents for 44 distinct, separately identified gages. Also, most of the 11 requests are compound in nature. That is, seven of defendants' 11 categories seek "all" or "each" of the documents referenced in those categories. And defendants seek "all" of the described documents for all 44 gages identified in Exhibit "B." *Id.* at 7. Viewed then in a pragmatic fashion, the putative subpoena requests more than 480 categories of documents (11 requests x 44 gages) from FM&T. There's more.

Some of defendants' requests, though presented as a single category, actually make multiple requests. For instance, category #1 seeks "[a]ll designs of development gages, initial released designs, initial inspections, initial calibration, and gage tryout reports, and Gage Operating instructions" for all 44 gages "set forth in Exhibit B" to defendants' motion. *Id.* at 7. So, in function, category #1 of defendants' proposed subpoena actually seeks six different categories of documents. And it seeks them for all 44 different gages.

Not all the requests are quite so expansive, however. For instance, category #10 seeks "[s]ource code and SQA documentation" for just two gages. *Id.* And category #12 seeks "[c]omplete FM&T job descriptions defining the duties and responsibilities of" six distinct positions at FM&T. *Id.* Likewise, category #13 seeks "All cancellation orders" for the 44 gages identified in Exhibit "B". *Id.*

### 3. Applying the Governing Legal Standard to the Subpoena Sought by Defendants

#### a. Specificity

Exercising its discretion, the court elects to skip to the last of the three requirements for a Rule 17 subpoena—"specific." The court does so because failing to satisfy any one of the three requirements provides sufficient reason to deny the request. *Cf. Gonzalez-Acosta*, 989 F.2d at

7

389 (failing to establish any one of these requirements precludes reversal of order refusing to issue subpoena).

Recall that our Circuit, like others, has confined Rule 17(c) subpoenas to ones that are specific in nature. *Abdush-Shakur*, 465 F.3d at 467. This requirement protects the Supreme Court's instruction that parties must not use Rule 17(c) to conduct discovery, "as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700. Our court has applied this standard and described the differences between a sufficiently specific subpoena and one that's impermissibly unspecific. In *Wittig*, for example, our court rejected a defendant's request to issue a Rule 17(c) subpoena, explaining: "Although the proposed subpoena narrows the subject matter as well as the date range and recipient, it continues to read like a civil discovery request, including a broad description of materials requested and an expansive 'Definitions' section that seeks 'each' and 'every,' 'any' and 'all,' 'without limitation' 'however denominated.'" 250 F.R.D. at 552. Our court reached the same conclusion in *United States v. Jackson*, where defendants' subpoenas used terms such as "any and all documents" and "including, but not limited to," both aimed at a broad array and large number of documents. 155 F.R.D. 664, 668 (D. Kan. 1994). *Jackson*, like *Wittig*, thus rejected the request for the subpoena, deeming its request for entire files not sufficiently specific. *Id.*

These rulings from our court comport with how our Circuit has differentiated between permissibly specific and impermissibly unspecific. In *Morris*, for example, the Circuit held that the district court hadn't erred when it concluded that a request for "all records, documents, reports, telephone logs . . . surrounding the investigation of the FBI undercover agent's shooting" of defendant "lacked specificity and constituted an impermissible fishing expedition[.]" 287 F.3d at 991. And our Circuit's rulings track decisions by other Circuits.

In *United States v. Richardson*, the Fourth Circuit affirmed a district court's order quashing a subpoena that would seek "[A]ll records (including but not limited to emails, postal correspondence, minutes/notes of meetings, memoranda,)" among other things, "relating to [subpoena recipient's] coordination of efforts, training and/or strategic partnerships with all agencies of the [U.S.] Department of Justice," among others government agencies.  607 F.3d 357, 368–69 (4th Cir. 2010) (first and third sets of brackets in original).  The Fourth Circuit held the subpoena lacked requisite specificity reasoning that:  "As we have explained consistently, 'a Rule 17 subpoena *duces tecum* cannot substitute for the limited discovery otherwise permitted in criminal cases and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena.'"  *Id.* (quoting *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010)).  *See also United States v. Villa*, 503 F. App'x 487, 489 (9th Cir. 2012) (upholding district court's ruling that defendant's putative subpoena asking municipality to produce documents "relating to a number of individuals involved in his case" was "insufficiently specific" to meet *Nixon*'s standards).

The reach of defendants' proposed subpoena here far eclipses subpoenas that courts have approved.  *See, e.g.*, *Romero*, 2023 WL 2614472, at *3 (approving subpoena seeking DMV records about one car on one day) (discussed above, p. 6); *United States v. Neal*, No. 11-cr-00163-WJM, 2011 WL 3648381, at *1 (D. Colo. Aug. 18, 2011) (finding sufficiently specific subpoena requesting:  (1) all documents relating to one specified traffic stop leading to prosecution at issue in the case; and (2) specified material from one police officers' personnel file).

Read together, these authorities convince the court that most, but not all the categories described in defendants' proposed subpoena here are far too unspecific.  The court thus denies

most of defendants' requested subpoena. But as already noted, this conclusion doesn't mean that every category fails.

Category #10 requests "[s]ource code and SQA documentation for gage 1k0524-ga1; and 1910161-gk503 [as] set forth on Exhibit B." Doc. 36 at 7. Category #12 seeks production of "job descriptions" for six specified positions of employment with Mr. Clinesmith's former employer, FM&T. Doc. 36 at 7. Category #13 seeks all "cancellation orders" issued by FM&T for the 44 gages listed in Exhibit "B."[1] *Id.* These three categories, the court concludes, are sufficiently specific to satisfy Rule 17's specificity requirement. The court thus continues its analysis of these three requests in the next two subsections.

### b. Relevance

Having concluded that three of defendants' categories of documents survive the specificity analysis, the court turns now to a second requirement: relevancy. *Morris*, 287 F.3d at 991 (citing *Nixon*, 418 U.S. at 699–700). Commentators have opined that the relevance inquiry is "fulfilled if the documents sought would tend to prove a material issue of the prosecution or defense." 25 James W. Moore & Robert M. Cipes, Moore's Federal Practice § 617.08[3][b]. But district courts properly quash subpoenas seeking irrelevant material. *United States v. Komisaruk*, 885 F.2d 490, 495 (9th Cir. 1989) ("The documents sought by [defendant] were irrelevant. [Defendant] destroyed a space shuttle computer instead of the Navstar navigational system. Therefore, documentary evidence relating to the Navstar navigational system was irrelevant and the district court did not abuse its discretion in denying a request to produce those documents." (citing *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984))).

---

[1] The court purposefully abbreviated the description used by category #13. The remainder of that request includes a request seeking "the rationale for each cancellation." Doc. 36 at 7. But Rule 17 authorizes subpoenas that seek documents, data, and other kinds of specified objects. Fed. R. Crim. P. 17(c). It doesn't authorize a party to propound interrogatory-like questions that the party subpoenaed must answer.

Since all but three of defendants' categories fail the specificity requirement, the court need only analyze the three categories of requests surviving that requirement. They are category #10 ("source code and SQA documentation for" two gages specified in Exhibit B to the proposed subpoena), category #12 (complete job descriptions for six FM&T positions), and #13 (cancellation orders for the gages described in Exhibit "B"). Doc. 36 at 7. First, for category #10, defendants' *ex parte* filing presents defendants' rationale why this category is relevant. Assessing the relevance of evidence before a trial begins is often a daunting assignment—as it here. And while defendants' argument has something of a circular quality to it, the court, for now, finds that defendants have made—for now—the requisite showing of relevance. But this finding is subject to reassessment when the case reaches trial. The court senses the government will challenge—and perhaps successfully so—the unspoken legal premise of defendants' relevance argument. Second, on category #12, defendants' *ex parte* filing explains why they believe these descriptions are relevant. While the court can't assess the relevance of these documents finally, defendants sufficiently have demonstrated enough relevance to warrant a subpoena seeking the specified position descriptions. Third, category #13 seeks "all" cancellation orders for the gages identified in Exhibit "B." *Id.* Defendants address the relevance of category #13. But the problem with defendants' explanation is that it addresses something different than what the subpoena requests, *i.e.*, FM&T's cancellation policy and its policies/procedures for cancellation. In contrast, defendants never address the documents actually sought by category #13—"[ ]all cancellation orders by FM&T for gages set forth in Exhibit B" and "the rationale for each cancellation." *Id.* at 7. The court thus finds that

defendants have failed to shoulder their burden to demonstrate the relevance of the documents sought by category #13.[2]

Finally, on the relevance front, the court pauses to address one of defendants' overarching arguments. They contend that the subpoena should issue for a reason unrelated to the contents of the documents they seek. Specifically, defendants argue that the government "only made voluntary requests of Honeywell FM&T, LLC"—Mr. Clinesmith's former employer—for evidence. Doc. 41 at 2. But the government "did **not subpoena** any information from FM&T. Thus, the defense has no assurance that the documents in the government's production are complete. . . ." *Id.* (emphasis in original). So, in essence, defendants argue they deserve to serve a Rule 17(c) subpoena to confirm that the government collected all pertinent evidence in FM&T's possession. Defendants cite no legal authority suggesting that their argument is one capable of supporting the relevance requirement. That's telling. For if this reason could satisfy the three *Nixon* requirements, it would mean a Rule 17(c) subpoena should issue in every case where the government has collected documents from a third party without using a grand jury subpoena. Nothing in *Bowman Dairy*, *Nixon*, or any of our Circuit's cases hints that defendants' proposition is the law.

In sum, defendants have sustained their specificity and relevance argument for just two categories of documents they seek—category #10 and category #12. So, the court next addresses the final requirement—admissibility—for that category of documents.

### c. Admissibility

Last, defendants' *ex parte* filing briefly argues why documents responsive to category

---

[2] The court expresses no opinion about the category of documents discussed in defendants' *ex parte* filing, *i.e.*, FM&T's cancellation policy and its policies/procedures for cancellation. And the court declines to treat defendants' *ex parte* filing as, in effect, a modification to their proposed subpoena. Taking that step now would deprive the government of the opportunity to address the cancellation policy and attendant procedures.

#10 and category #12, *i.e.*, – source code for two specified gages and job descriptions for six specified positions, are admissible. Defendants must so argue, of course, to satisfy the *Nixon* test. *See* 418 U.S. at 699 (subpoena's proponent must show "that the documents are evidentiary and relevant"—summarizing this requirement as "admissibility"). *See also id.* at 700–02 (analyzing admissibility "with respect to the offenses charged in the indictment" and considering hearsay problems of materials sought by subpoena). The court maintains some doubt whether the source code and six positions descriptions ultimately will make their way into evidence. But defendants' argument, though cursory, carries just enough appeal to nudge this source code and these six descriptions over the admissibility hurdle. The court thus concludes defendants have carried their burden for the source code identified in category #10 and the six position descriptions identified in category #12.

## *Conclusion*

For the reasons expressed in this Order, the court concludes that defendants have carried their burden for two categories of documents. The court thus authorizes the Clerk to issue a subpoena duces tecum under Fed. R. Civ. P. 17(c) for category #10 and category #12 in Exhibit "A" of defendants' Motion for Rule 17(c) Subpoena, Doc. 36 at 7. But defendants have failed to shoulder their burden in all other respects. The court thus grants defendants' motion in part but denies it in all other respects.

This Order directs the Clerk to issue a Rule 17(c) subpoena seeking production in advance of trial of "[s]ource code and SQA documentation for gage 1k0524-ga1 and 1910161-gk503" and "[c]omplete FM&T job descriptions defining the duties and responsibilities of the following positions:  Buyers, Project Engineers, Product Engineers, Quality Engineers, Managers

and Gage Engineers." *See* Doc. 36 at 7.  It is defendants' responsibility to prepare and present such a subpoena for review and approval by the Clerk.

**THEREFORE,** defendants' Motion for Rule 17(c) Subpoena (Doc. 36) is granted in part and denied in part, as described in this Order.

**IT IS SO ORDERED.**

**Dated this 1st day of April, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
