## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       **Plaintiff,**

v.

MICHAEL GRANT CLINESMITH (01),
RICHARD WAYNE MUELLER (02),

       **Defendants.**

Case No. 23-20063-DDC

### MEMORANDUM AND ORDER

During a February 20, 2025 hearing, the court granted defendants leave—over the government's objection—to file an *ex parte* memorandum. The court confined this *ex parte* filing to defendants explaining the relevance and admissibility of documents targeted by their proposed Rule 17(c) subpoena. *See* Doc. 36 (defendants' motion for subpoena); *see also United States v. Nixon*, 418 U.S. 683, 699–700 (1974) (establishing relevant, admissible, and specificity as requisites for Rule 17(c) subpoena). The court granted this request because requiring defendants to file those arguments publicly would cause them to share their trial strategy with the government. *See United States v. Tomison*, 969 F. Supp. 587, 592–93 (E.D. Cal. 1997) (to "require the defendant to divulge his or her theory of the case as a prerequisite for pre-trial production [under Fed. R. Crim. P. 17(c)] would discourage the defendant from using the Rule in the first place," cited by *United States v. Daniels*, 95 F. Supp. 2d 1160, 1163 (D. Kan. 2000)).

Defendants responded to the court's leave, filing 31 pages of argument. Doc. 49. Defendants devoted most of their *ex parte* filing to explaining why the documents they target qualify as relevant and admissible. In contrast, most of the first nine pages of this submission argued about what the government must prove to convict defendants. Those first nine pages

concerned the court because it never intended to provide defendants a round of *ex parte* briefing about the case's substantive legal issues.  Worried about the way things had played out, the court, acting on its own, issued an Order requiring defendants to show cause why the court shouldn't unseal most of the first nine pages of defendants' *ex parte* submission.  Doc. 50.  Defendants now have responded to the court's Show Cause Order.  Doc. 51.  The government filed a Reply, Doc. 52, and defendants submitted a third submission, Doc. 53 ("Defendants' Response to the Government's Reply").  There's no need to summarize all the parties' arguments.  Instead, the court discusses defendants' two main points, below.

*First*, defendants argue, the elements of a criminal charge materially influence what evidence is and isn't relevant and admissible.  So, defendants say, they had to outline the governing law because it defines what's relevant.  It's not an argument without force.  *Second*, defendants renew their position that defendants have an unfettered right to submit *ex parte* requests for Rule 17(c) subpoenas.  This point isn't new.  Defense counsel persistently has argued that defendants have a right to request Rule 17(c) subpoenas in *ex parte* filings.

Defendants have every right to argue what they think the law should be.  But that doesn't make their view the prevailing law in our District.  Nearly 25 years ago, *Daniels* explained that "[a] determination of whether an ex parte application [under Rule 17(c)] is necessary must be evaluated on a case by case basis."  95 F. Supp. 2d at 1163.  *Daniels* continued, finding that the circumstances there warranted *ex parte* practice.  As Judge Saffels put it, "The court has reviewed the pleadings filed under seal in this case and finds they contain information that is considered 'trial strategy.'"  *Id.*

The court has followed essentially the same process here and reached the same conclusion as *Daniels*.  Specifically, defendants filed their request to secure a subpoena duces

tecum in a publicly visible filing.  This filing notified the government—and the public, to the extent it's following along—that defendants were trying to secure a Rule 17(c) subpoena.  And this public filing also identified the documents defendants hoped to secure.  But defendants' public filing omitted discussing why, in defendants' view, the documents were relevant and admissible at trial.  Then, defendants convinced the court that explaining the relevance of particular documents (actually, particular categories of documents) would share their trial strategy with their adversary.  And so, the court permitted defendants to submit an *ex parte* filing aiming to establish two of *Nixon*'s three requisites.  This approach created, to the fairest extent possible under the circumstances, an even and informed playing field.  And it preserved a bedrock of our system of criminal justice:  the federal courts resolve criminal cases by an adversarial process, and courts carefully should confine any exceptions to that rule.

As reported, the government also has had its say about the Show Cause Order.  *See* Doc. 52.  It too argues forcefully.  The United States explains that defendants' view about the law controlling the merits of the charges here "may be erroneous."  *Id.* at 3.  And so, the government contends, it deserves the opportunity to participate in the adversarial process by which the court defines the law controlling the merits of this case.

Balancing these competing interests, the court elects to preserve their filing (Doc. 49) as sealed.  It does so because, the court now has determined, that it may decide the Rule 17(c) subpoena dispute without considering defendants' broad legal arguments in the first nine pages of Doc. 51.  In effect, the court needn't consider those first nine pages to decide whether to authorize the requested subpoena.  The court thus won't invest the time necessary to discern the broad substance of the legal arguments defendants make in their *ex parte* filing.

This outcome doesn't resolve the broader concern, though.  Listening to counsel's many arguments about something so simple as a Rule 17(c) subpoena suggests that more substantive disputes will arise later.  The parties have hinted at these substantive disagreements about the elements of the charges at issue, or at least for some of the charges.  Unwilling to postpone all of this debate until trial, the court, in a Supplemental Scheduling Order, will establish a process to bring those disputes to the surface sooner, not later.

**IT IS SO ORDERED.**

**Dated this 1st day of April, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**