# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23-20063-DDC** |
| **MICHAEL GRANT CLINESMITH (01),** | |
| **RICHARD WAYNE MUELLER (02),** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

### Background

This Order addresses defendants' latest effort to secure a subpoena under Fed. R. Crim. P. 17(c). This motion's saga covers too much ground to recite it all and, besides, some of that history proves collateral to the decisions made here. So, this Order provides only this abridged background:

- On April 1 of this year, the court issued a Memorandum and Order granting part of defendants' motion asking to issue a Rule 17(c) subpoena. Specifically, the court approved a subpoena for two of the 14 categories defendants had requested in their motion. *See* Doc. 54 (ruling on defendants' Motion for Rule 17(c) Subpoena (Doc. 36)). This 14-page Memorandum and Order explained the court's rationale for its decisions. In short form, the court found that most of defendants' requests for records failed the specificity requirement adopted in *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). This Order also concluded that defendants had satisfied the relevance requirement for some of their requests, but not all of them. The court won't rehash that Order's reasoning. It suffices to say that most of defendants' request didn't comport with our

Circuit's expression of the specificity standard, *i.e.*, "*Nixon* mandates that the party requesting information [by a Rule 17 subpoena] identify the item sought and what the item contains, among other things." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (citing *Nixon*, 418 U.S. at 700).

- Three days after that Memorandum and Order issued, defendants filed a Motion for Reconsideration. Doc. 57 (filed April 4, 2025). Hoping to move things along, the court scheduled and conducted a hearing one week later—on April 10. During this hearing, the court heard additional argument from counsel. And the court further explained why most of defendants' descriptions failed the specificity standard.

- Near the end of this April 10 hearing, the court advised that its original ruling stood: defendants hadn't described the targeted documents with the requisite specificity. So, the court announced defendants would lose their Motion for Reconsideration—an outcome the court would memorialize in a written order. But the court also explained that it would consider a new Rule 17(c) motion ameliorating the shortcomings of defendants' original motion.

- Before the court could issue the promised order, defendants filed another motion. In lieu of filing a new motion, defendants filed another motion for reconsideration—one they called an "Amended Motion for Reconsideration of Memorandum and Order" (Doc. 62). Defendants also submitted a sealed, ex parte filing addressing the relevance of their request for Tool Cancellation Notifications. Doc. 63.

This Order decides defendants' Amended Motion for Reconsideration, Doc. 62.[1]

---

[1]    Our court's Rules of Practice set the deadline for the government to respond to defendants' amended motion for May 7, 2025. *See* D. Kan. Rule CR1.2 (responses to motions filed in criminal cases due 14 days after motion is served). The government hasn't responded to defendants' amended motion. And so, the court could treat defendants' amended motion as uncontested. But that approach isn't fair to

## Analysis

Defendants' amended motion announces that defendants have "amended Exhibits A and B"—the attachments used by their original Rule 17(c) motion to identify the documents they hoped to secure by subpoena. *See* Doc. 62 at 1. Amended Exhibit "A" describes 10 categories of documents defendants would seek—down slightly from the 14 categories sought by the original Exhibit "A." The amended 10 categories of documents are something of a mixed bag. Some specify individual documents—*e.g.*, "Tool Control Note" for 16 of the gages identified in Amended Exhibit "B." Doc. 62 at 3. But as this Order will explain later, others still target categories of records. *See* Doc. 62 at 1 (category 1, seeking "supporting data analysis"). Amended Exhibit "B" further defines defendants' requests, showing which gages apply to the 10 requests in Amended Exhibit "A." Defendants attached these Amended Exhibits "A" and "B" to Doc. 62. *See* Doc. 62-1 (Amended Exhibit "A"); Doc. 62-2 (Amended Exhibit "B"). They assert that the two attachments "reflect the Court's concerns regarding specificity" and "eliminate[ ] requests that may be redundant." Doc. 62 at 1. Defendants also assert that the Amended Exhibits "A" and "B" request "production of a total of only 172 documents," and defendants conclude by asserting that "[t]hese documents are very specific as to the precise gage, the issue of the gage[,] and the location of the documents." *Id.* at 3. The court's not so sure about defendants' math or their assertion that they've identified specific records.

Start with defendants' math. They base their count of 172 records on the matrix in Amended Exhibit "B." *See* Doc. 62-2 at 2. This matrix uses checkmarks, claiming that the

---

the case's history. The United States made its position clear during the April 10 hearing—it opposes defendants' reconsideration motion. Thus, it's fair to presume that the government also opposes defendants' amended motion. Equally important, the court "has an interest in preserving the proper procedure prescribed by the Rules of Criminal Procedure, irrespective of the desires of the parties." *United States v. Wittig*, 250 F.R.D. 548, 551 (D. Kan. 2008). In sum, the court doesn't treat defendants' amended motion as unopposed.

number of checkmarks in the matrix—172 of them—illustrates how many *specific* documents defendants' revised subpoena would request.  But correlating the number of checkmarks with the number of documents at issue is misleading.  In brief, defendants count the number of checkmarks for each category of document requested (also specifying which gages each request implicates).  And then defendants add the subtotals for each category of documents for a total of 172 documents.  *See* Doc. 62-2 at 2.  But these subtotals—and thus the total of 172 records—ignore important content in Amended Exhibit "B."

For instance, the first line of the exhibit's matrix applies the subpoena's request for "initial full calibration inspection reports" to a gage identified as 1910161-gk503-3.  *Id.* at 1 (top line of column captioned "Gage #").  But defendants also append a footnote signal—"*"—to this request.  And the corresponding footnote adds other calibration reports to this request.  Specifically, the footnote directs the subpoena's target "Also [to] provide [the] Calibration Procedure (CP) document, maintenance document, and Qualification data held in CMS."  *Id.* at 2 (footnote identified as "*").  In effect, footnote * adds documents apparently excluded from defendants' 172 documents count.  Footnote * isn't the only additional request that appears to escape defendants' count.  Three other footnotes—identified as footnotes **, ***, and ****—all add requests for additional documents that defendants don't appear to count in their total of 172 records.  *See, e.g.*, *id.* at 2 n.** (adding "Also provide 'Design' or 'Design & Make' for issue B & C" to eight of the listed gages).[2]

---

[2]    The expanders in the matrix's four footnotes aren't inconsequential.  Consider footnote ***.  Footnote *** applies to eight gages identified by the matrix, and corresponds to the narrative used to describe the documents sought by category 1 of Amended Exhibit "A."  This narrative purports to seek merely "issue A" of the gage drawing for the referenced eight gages.  But footnote *** also directs the subpoena's recipient to "provide drawing issue[s] B & C."  Doc. 62-2 at 2.  In sum, footnote *** triples the scope of this category's request.  And it does so for eight distinct gages.

Moreover, the expanders in the matrix's footnotes aren't the only means used to camouflage the actual scope of the subpoena. The interlocking mechanisms used in Amended Exhibits "A" and "B" have the same effect. As an example, consider category 1 of defendants' proposed subpoena. It seeks the following records:

1.    **Initial (issue A) gage drawings, including Dimensional Inspection Reports and supporting data analysis, released in the Honeywell Matrix System per applicable checked gages in Amended Exhibit "B" are requested.**  Initial inspections, initial calibration and gage tryout reports and gage operating instruction for all gages have been removed from this request.

Doc. 62 at 2.  But when one turns to the referenced Amended Exhibit "B" to discern "the applicable checked gages" subject to this request, one finds this detail in defendants' matrix:

**AMENDED EXHIBIT "B"**

| Gage # | PO# | Gage Drawing | Product Drawing | Cal. Report | GOI Doc. | TCN Cancels | PTO/TDS | Buyer eval | compete bids | Product (Part)# |
|---|---|---|---|---|---|---|---|---|---|---|
| 1910161-gk503-3* | N000228501 | | | √ | √ | | | √ | √ | |
| 1910161-gk520 | N000328629 | | | | | | | | | |
| 1a0012-ga1 | N000317795 N000348425 | √ | | √ | | | | | | |
| 1a0012-ga2 | N000317796 N000341874 | √ | | √ | | | | | | |
| 1a0013-ga1 | N000344236 | | | | | √ | | | | |
| 1a1111-ga2 | N000207331 | | | | | | | | | |
| 1a1125-ga1 | N000217484 | | | | | | | | | |
| 1a1135-ga1 | N000227190 | | | | | | | | | |
| 1k0524-ga1* | EP48349 | √ | √**** | √ | √ | | | √ | √ | 1k0524 |
| 1k0524-ga2 | N000165481 | | | √ | | | | √ | √ | |
| 1k0524-ga3 | N000164878 | √ | | √ | | | | | | |
| 1k0524-ga4 | | √ | | √ | | | | | | |
| 1k0524-ga5 | N000207882 | | | √ | | | | √ | √ | |
| 2a1046-ga1 | N000240902 | | √ | | | | | | | 2a1046 |
| 2a1083-ga2 | N000207867 | | | √ | | | | √ | √ | |
| 2a1083-ga3 | N000220397 | | | √ | | | | √ | √ | |
| 2a1083-ga4-1 2a1083-ga4-2 | N000227275 | | √ | √ | | | | √ | √ | 2a1083 |
| 2a1083-ga6-1 2a1083-ga6-2 | | | | √ | | | | √ | √ | |
| 2a1791-ga1 | N000202134 | | | | | | | | | |
| 2a1796-ga1-1 2a1796-ga1-2 | N000203397 | | | √ | | √ | | | | |
| 2a1796-ga2 | N000203886 | √ | | | | | | | | |

Doc. 62-2 at 1 (sample of matrix).  There's a gap between:  (1) the way the third column in defendants' matrix describes the documents sought, *i.e.*, "Gage Drawing"; and (2) the way Amended Exhibit "A" describes the documents sought by Category 1.  Recall that category 1 seeks the "Initial (issue A) gage drawings, *including Dimensional Inspection Reports and supporting data analysis*, released in the Honeywell Matrix System per applicable selection of Amended Exhibit 'B' table."  Doc. 62-1 at 1 (category no.1) (emphasis added).  But defendants'

6

matrix never accounts for—and thus never counts—the subpoena's request for "Dimensional Inspection Reports" or the "supporting data analysis." In short, there's another discrepancy between the true footprint of the proposed subpoena and defendants' assertion that they seek no more than 172 records.

While this counting discrepancy concerns the court, it isn't necessarily fatal to defendants' request for a Rule 17(c) subpoena. Neither Rule 17(c) nor the cases applying it limit such a subpoena to a certain number of requests. Instead, binding precedent construes Rule 17(c) to mandate that a party serving a subpoena must serve requests that (among other things) seek *specific* documents. *Morris*, 287 F.3d at 991 (citing *Nixon*). And indeed, some of defendants' amended requests—as expressed in Amended Exhibit "A" (Doc. 62-1)—are sufficiently specific to comply with this standard. So, this Order grants—in part—defendants' Amended Motion for Reconsideration (Doc. 62). But other aspects of the proposed subpoena still don't meet *Nixon*'s specificity and relevance requirements. The court explains these conclusions, below.

As already discussed, Amended Exhibit "A"'s first category seeks "Initial (issue A) gage drawings, including Dimensional Inspection Report." Doc. 62 at 2. So far so good. But then, category 1 adds a request for "*supporting data analysis*" to this request, and applies it the 30 gages check-marked in the matrix, Amended Exhibit "B." Doc. 62-1 at 1 (emphasis added). This expanding language is far too general to satisfy the specificity standard, as defined by our Circuit in *Morris*. That is, this term doesn't "identify the item sought and what the item contains[.]" 287 F.3d at 991.

But the larger problem with defendants' proposed subpoena is relevance. For starters, defendants' proposed subpoena, like its predecessor, never limits its requests to any period of

time—much less the period covered by the charges defendants face here.  So, absent modification, the subpoena would obligate its recipient to compile and provide all responsive documents —no matter when created.  Counts 1 through 5 span the period from "at least 2011 through at least in and around January 2021 . . . ."  Doc. 1 at 9 (Conspiracy charge in Count 1); *id.* at 11 (Wire Fraud and Honest Services Wire Fraud charged in Counts 2-5).  Neither defendants' original motion nor either of their reconsideration motions justifies requests for records outside the period covered by the Indictment.  So, the court orders defendants to add an instruction to the subpoena approved by this Order limiting its requests to the period January 2011 to January 2021.  The same logic negates several explicit requests seeking documents that are current or "active status" records.

Separately, category 9 of the Amended Exhibit "A" contains a narrower relevance problem.  Doc. 62-1 at 1.  This request would seek the "Initial (typically issue A) release of the part drawing documents held in [the] Matrix System" for certain gages identified in Amended Exhibit "B."  This category generally corresponds to category 9 in the original Exhibit "A" (Doc. 36 at 7), which had sought the "Part Drawing (base number of gage) associated with all gages" specified in the original Exhibit "B" (Doc. 36 at 8).  The court discussed the old category 9 with defense counsel at length during the April 10 hearing.  Defendants' renewed category 9 fares slightly better on the specificity front.  But even assuming that this revised request now is sufficiently specific, it falters when it comes to relevance.  Defendants haven't demonstrated why drawings for parts of a nuclear bomb have "any tendency to make a fact more or less probable than it would be without the evidence," much less that any such fact "is of consequence" to deciding this case's issues.  Fed. R. Evid. 401 (defining test for relevant evidence).  Defendants' Amended Motion for Reconsideration (Doc. 62) never explains how part drawings are relevant.

In sum, defendants ask the court to approve a subpoena that is wider than *Nixon*'s standard can abide. Though this Order has discussed examples of this shortcoming it doesn't catalog every such shortcoming. That would consume too much time and effort. Instead, this Order highlights the proposed subpoena's shortcomings. Attachment 1 to this Order strikes through (in red ink) the portions of defendants' proposed subpoena that do not comport with governing law. The court directs defendants to modify their proposed subpoena so that it eliminates the language disapproved portions shown in Attachment 1.

### Conclusion

The court grants defendants' Amended Motion for Reconsideration (Doc. 62) in part. But it denies that motion in other respects. This ruling grants defendants leave to secure from the Clerk a subpoena conforming to this Memorandum and Order. The court further directs defense counsel to prepare such a subpoena and submit it for review by the court. Defendants also must file that proposed subpoena to make it part of the case's CM/ECF record. If the government contends that defendants have failed to conform with the court's rulings addressing defendants' efforts to secure a subpoena, it must file—**within three days**—a motion presenting such an issue to the court for decision. The court will make itself available timely to resolve any remaining disputes.

**THEREFORE,** the court grants in part and denies in part defendants' Amended Motion for Reconsideration (Doc. 62), as explained in full in this Order and its Attachment 1.

**IT IS FURTHER ORDERED** that defendants' original Motion for Reconsideration (Doc. 57) is denied as moot because defendants' amended motion (Doc. 62) superseded it.

**IT IS SO ORDERED.**

Dated this 28th day of May, 2025, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge