IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                            Plaintiff,<br><br>v.<br><br>MICHAEL GRANT CLINESMITH (01),<br><br>                            Defendant. | Case No. 23-20063-01-DDC |

**MEMORANDUM AND ORDER**

Defendant Michael Grant Clinesmith is charged with one count of conspiracy to commit wire fraud and honest-services wire fraud and four counts of wire fraud and honest-services wire fraud. Doc. 1. Highly summarized, the government alleges that Mr. Clinesmith, a gage engineer for Honeywell Federal Manufacturing and Technologies, schemed with the owners of Mueller Machine and Tool (MMT) to defraud Honeywell. Under the scheme, Mr. Clinesmith steered Honeywell's gage-design-and-manufacture work to MMT and, in exchange, MMT paid Mr. Clinesmith to design gages—gages that Mr. Clinesmith's employer, Honeywell, ultimately purchased.

The parties have filed motions in limine. The court provided the parties with its rulings at the limine conference held on September 26, 2025. It memorializes those rulings here. Then, it explains its ruling on the most contentious of the motions in limine: the government's request to exclude evidence about the quality of the gages produced by MMT, Mr. Mueller, and Mr. Clinesmith.

I.      **Motions in Limine**

Mr. Clinesmith filed a Motion in Limine (Doc. 88) requesting that the court order the government to play the entirety of Mr. Clinesmith's recorded interview under the rule of completeness, Fed. R. Evid. 106. The court denies that motion. *See United States v. Williston*, 862 F.3d 1023, 1038–39 (10th Cir. 2017); *United States v. Herman*, No. 22-8057, 2023 WL 6861766, at *6 (10th Cir. Oct. 18, 2023) ("Rule 106 does not confer a right to admit hours of recordings.").

The government filed an Omnibus Motion in Limine (Doc. 89), which requested rulings on seven topics. The court saves the first topic—gage-quality evidence—for later.

In the second topic of its motion, the government asks to preclude argument and evidence that blames Honeywell for failing to identify or stop the scheme sooner. Doc. 89 at 9–11. Mr. Clinesmith doesn't dispute this motion, so the court grants it.

The third topic of the government's motion in limine seeks to preclude Mr. Clinesmith from admitting his own statements under Fed. R. Evid. 801(d)(2) or the rule of completeness in Fed. R. Evid. 106—specifically, the above-mentioned interview with law enforcement. *Id.* at 11–13. Mr. Clinesmith hasn't identified any particular passages of this interview that he seeks to admit. Instead, Mr. Clinesmith asked the court to admit the interview in its entirety, a request the court denied. Doc. 88. The court thus grants the government's motion in limine. If Mr. Clinesmith claims that particular passages of the interview qualify at trial under Rule 106, he must identify the specific passages and state specific grounds for their admission.

In its fourth motion in limine, the government asks the court to prohibit Mr. Clinesmith from impeaching witnesses with specific statements from law-enforcement memorandum of interviews (MOI). Doc. 89 at 13–15. The court grants the part of the motion asking to preclude witnesses from reading an MOI that's not in evidence. It denies the part of the motion that seeks

2

to prelude Mr. Clinesmith—wholesale—from using MOIs to refresh recollection. And it denies the part of the motion that seeks to preclude Mr. Clinesmith from using MOIs to impeach witnesses. Impeachment depends on context—the specific MOI statement and the specific witness. Also, in theory, a witness might adopt a statement in a MOI as the witness's own statement. And if that occurs, it could affect the analysis. So, it's up to the government to object to MOI usage on impeachment grounds at trial.

The government's fifth motion in limine asks the court to find that uncharged evidence of Mr. Clinesmith's conduct is intrinsic and thus not subject to the requirements of Fed. R. Evid. 404(b). Doc. 89 at 15–23. The court denies the request because it is not prepared to make the finding requested by this motion pretrial, without hearing any of the evidence first.

The sixth motion in limine topic asks the court to admit co-conspirator statements under Fed. R. Evid. 801(d)(2)(E). *Id.* at 23–26. The court concludes it should conduct a pretrial *James* hearing to evaluate this request, so it withholds ruling on this motion until that hearing concludes.

The seventh and final motion in limine asks the court to admit self-authenticating documents. *Id.* at 26–27. The parties since have agreed to consider the documents authenticated but still subject to hearsay challenges. Mr. Clinesmith also preserves all other non-hearsay challenges. The court thus denies this final motion in limine as moot.

## II.    Government's Motion in Limine Topic #1: Gage-Quality Evidence

The government's topic number one seeks to preclude evidence and argument about the quality of gages designed by Mr. Clinesmith and manufactured by MMT. *Id.* at 4–9. The government anticipates that Mr. Clinesmith will offer evidence and elicit testimony that MMT delivered working gages to Honeywell, so Honeywell suffered no economic loss. The

government argues that gage-quality evidence is irrelevant. The court agrees and grants this motion.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The bar for admission under Rule 401 is very low." *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) (quotation cleaned up). But Rule 401 "does not sanction the carte blanche admission of whatever evidence a defendant would like." *Id.* And, even when evidence is relevant, Fed. R. Evid. 403 requires the court to exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The government alleges that Mr. Clinesmith defrauded Honeywell by steering Honeywell's gage work to MMT and accepting kickbacks from MMT. Doc. 1 at 11. The first object of the scheme—gage subcontracts—undergirds the wire-fraud charges. The second object of the scheme—kickbacks—undergirds the honest-services-wire-fraud charges. The court's analysis begins with the relevance of evidence, if any, about gage quality to wire fraud. It then considers the relevance of gage quality to honest-services wire fraud.

### A. Wire Fraud

"To be guilty of wire fraud, a defendant must (1) 'devise' or 'intend to devise' a scheme (2) to 'obtain money or property' (3) 'by means of false or fraudulent pretenses, representations, or promises.'" *Kousisis v. United States*, 145 S. Ct. 1382, 1391 (2025) (quotation cleaned up) (quoting 18 U.S.C. § 1343). Critically, for purposes of this motion, to prove wire fraud, the government needn't show that the scheme caused the victim economic loss. *Id.* at 1392. As the Supreme Court put it, "a defendant violates § 1343 by scheming to 'obtain' the victim's 'money

4

or property,' regardless of whether he seeks to leave the victim economically worse off." *Id.* And so, to the extent Mr. Clinesmith aspires to prove that Honeywell got the gages it bargained for and didn't suffer an economic loss, that evidence is irrelevant.

Indeed, the Indictment demonstrates that the government, in theory, could establish all three wire-fraud elements without any need to discuss the quality of the gages. To meet element one, the government alleges that MMT and Mr. Clinesmith devised a scheme in which Mr. Clinesmith steered Honeywell gage work to MMT and, in exchange, Mr. Clinesmith received bribes and kickbacks from MMT. Doc. 1 at 5. For element two, the goal of the alleged conspiracy was to acquire money—*i.e.* to induce Honeywell to award subcontracts to MMT. And for the final element, the alleged conspirators purportedly used the following false and fraudulent pretenses:

- Mr. Clinesmith and Mr. Mueller deceived Honeywell into thinking it had awarded gage work to independent vendors based on objective criteria;

- Mr. Clinesmith falsely represented MMT's gage-design capabilities to Honeywell;

- Mr. Clinesmith provided quotes for MMT to use when bidding on Honeywell work, then Mr. Clinesmith would use his position at Honeywell to approve those quotes as fair and reasonable;

- Mr. Mueller added an upcharge to MMT's gage-design bids—with Mr. Clinesmith's knowledge and consent—and retained the money, though MMT did little-to-no design work; and

- Mr. Clinesmith, in his capacity as a Honeywell engineer, approved gage designs that he himself had created but, together with Mr. Mueller, falsely and fraudulently represented as MMT's work.

*Id.* at 6–7.

These alleged facts could meet the elements of wire fraud—no mention of the gages MMT provided to Honeywell required. And so, it doesn't matter if Mr. Clinesmith provided Honeywell with good (or bad) gages or that he caused Honeywell no economic loss. Wire fraud

5

only requires that a defendant "obtain[] money or property." 18 U.S.C. § 1343. "A thing is no less 'obtained' simply because something *else* is simultaneously given in return." *Kousisis*, 145 S. Ct. at 1392 (emphasis in original). The court thus agrees with the government. Gage-quality evidence is irrelevant to the wire-fraud charges.

### B. Honest-Services Wire Fraud

So too for the honest-services-wire-fraud charges. The government also has charged Mr. Clinesmith with depriving Honeywell of his honest services, violating 18 U.S.C. § 1346. Section 1346 provides that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." And so, honest-services wire fraud is just a different variant of wire fraud. The difference is the object of the scheme. That is, the wire-fraud charges allege that defendants defrauded Honeywell to secure gage contracts for MMT, while the honest-services-wire-fraud-charges allege that defendants defrauded Honeywell of Mr. Clinesmith's honest services.

Here's how the Supreme Court has explained the kind of honest-services-fraud at issue in this case:

> When one tampers with the employer-employee relationship for the purpose of causing the employee to breach his duty to his employer, he in effect is defrauding the employer of a lawful right. The actual deception that is practised is in the continued representation of the employee to the employer that he is honest and loyal to the employer's interests.

*Skilling v. United States*, 561 U.S. 358, 401 (2010) (quotation cleaned up). Put simply, in an honest-services-wire-fraud case, a private employee has "breached his allegiance to his employer by accepting bribes or kickbacks in the course of his employment." *Id.* (quotation cleaned up). And, like wire fraud, honest-services wire fraud does not require the government to show economic harm. *See United States v. Milovanovic*, 678 F.3d 713, 726–27 (9th Cir. 2012) (en

banc) ("Foreseeable economic harm is not a necessary element when evaluating whether a party breached a fiduciary duty in violation of honest services fraud under §§ 1341 and 1346.").

Because the only difference between wire fraud and honest-services wire fraud is the scheme's object, the same conclusion about gage-quality evidence applies: it's not relevant. It doesn't matter if Mr. Clinesmith, working with Mr. Mueller and MMT, delivered the greatest gages on the globe. The government need only show that Mr. Clinesmith breached his duty of loyalty and honesty to Honeywell. Put another way, this case is about the procedure used to create gages for Honeywell, not the substantive product the scheme produced.

### C. Mr. Clinesmith's Arguments

Straining to avoid this outcome, Mr. Clinesmith first attempts to distinguish *Kousisis*. Doc. 95 at 2. He argues that *Kousisis* doesn't govern because it's a wire-fraud case, and this is a honest-services-wire-fraud case. Doc. 95 at 2. The court must emphasize: this case *is* a wire-fraud case. As just explained, the government alleges that Mr. Clinesmith schemed with Mr. Mueller to induce Honeywell to award subcontracts to MMT under a variety of false pretenses. So, the Indictment alleges wire fraud. Indeed, the wire-fraud scheme alleged here bears similarity to the fraudulent-inducement scheme at issue in *Kousisis*, where defendant falsely represented that it had complied with a state agency's bid requirements to secure contracts from a state agency. 145 S. Ct. at 1391. *Kousisis* thus squarely governs the wire-fraud charges in this case.

Mr. Clinesmith insists that *Kousisis* doesn't govern the honest-services-wire-fraud charges. Doc. 95 at 2. To an extent, he's right about his proposition. The object of the *Kousisis* scheme was agency contracts. No one in *Kousisis* had allegedly deprived anyone of an employee's honest services. But this point doesn't get Mr. Clinesmith very far. After all, as this Order already has explained, honest-services wire fraud is a form of wire fraud.

Perhaps sensing that *Kousisis* spells trouble for him, Mr. Clinesmith cites the concurring opinions there. Citing Justice Sotomayor's concurrence, he insists that *Kousisis* doesn't govern a case "'in which a defendant provides exactly the goods or services that they promised to deliver, but lies in other ways to induce the transaction.'" Doc. 95 at 3 (citing *Kousisis*, 145 S. Ct. at 1412 (Sotomayor, J., concurring)). But return to basics: a concurring opinion by a single Justice can't limit the holding embraced by the majority opinion. *Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997) (explaining that statement "was contained in a concurrence, so" it did not "constitute[] binding precedent"). And, more importantly yet, the case Justice Sotomayor describes—providing goods as promised but lying to induce the sale—is not honest-services wire fraud.[1] Mr. Clinesmith's argument confuses wire fraud and honest-services wire fraud. The government doesn't allege that Mr. Clinesmith committed honest-services wire fraud by delivering Honeywell goods or services. Instead, the Indictment charges that he committed wire fraud by lying to induce the transaction. And, the United States alleges that he committed honest-services wire fraud by breaching his duty to Honeywell, his employer, by accepting kickbacks from Mr. Mueller. So the situation Justice Sotomayor describes doesn't apply to the honest-services-wire-fraud charges here.

---

[1] Stepping outside of honest-services wire fraud and returning to wire fraud for a moment, the court pauses to clarify why the wire-fraud portion of this case doesn't resemble the hypothetical from Justice Sotomayor's concurrence. Justice Sotomayor expressed concern about prosecuting as wire fraud a situation in which a defendant provides exactly what they promised, but lied in other ways to induce the transaction. *Kousisis*, 145 S. Ct. at 1412 (Sotomayor, J., concurring). She gives the example of "a babysitter who lands a job by fibbing about how she will use the money (for college savings, rather than a spring break trip), but otherwise fully and satisfactorily takes care of the child[.]" *Id.*

But, as the *Kousisis* majority points out, the "demanding materiality requirement substantially narrows the universe of actionable misrepresentations." *Id.* at 1398 (quotation cleaned up). And the fraudulent-inducement theory at issue here "criminalizes a particular species of fraud: intentionally lying to induce a victim into a transaction that will cost her money or property." *Id.* If this seems broad, that's because Congress intended it to be broad. *Id.*

Mr. Clinesmith also argues that *Kousisis* doesn't govern because the materiality of the defendant's misstatement wasn't at issue in *Kousisis*. Doc. 95 at 4. And that much is correct. The *Kousisis* defendant didn't contest that he had made a material misrepresentation to the state agency. 145 S. Ct. at 1396. This fact led Justice Thomas to write separately about materiality, and even suggest a materiality test. *Id.* at 1400–01 (Thomas, J., concurring). Specifically, Justice Thomas suggested that "for a contract term to be material, it must go to the very essence of the bargain." *Id.* at 1401 (quotation cleaned up). Seizing on Justice Thomas's proposed materiality test, Mr. Clinesmith argues that the "'essence of the bargain' is precisely the evidence that the government seeks to exclude because it would prove that Honeywell got precisely what it contracted for[.]" Doc. 95 at 4. Not so.

Mr. Clinesmith's argument misunderstands honest-services wire fraud. The essence of the bargain isn't the gages. The essence of the bargain is Mr. Clinesmith's honest service to his employer. For example, the government alleges that Mr. Clinesmith steered Honeywell work to MMT by falsely representing MMT's gage-design capabilities. Doc. 1 at 6. The government also alleges that Mr. Clinesmith—working as a Honeywell gage engineer—provided Mr. Mueller with quotes for MMT to use when bidding on subcontracts. He then would approve these same quotes as fair and reasonable. *Id.* Mr. Clinesmith, in his capacity as a Honeywell employee, also allegedly approved gage designs that he himself had created surreptitiously for MMT. *Id.* at 7. In essence, the government alleges that Mr. Clinesmith rigged the system at Honeywell so that Honeywell would award MMT contracts and, in return, MMT would provide Mr. Clinesmith with a kickback. So, contrary to Mr. Clinesmith's argument, evidence about the quality of the gages would not prove that Honeywell got the gages it bargained for. That's not

the issue at all. Instead, the question is whether the alleged kickback scheme deprived Honeywell of the honest services of its employee.

Moving on from *Kousisis*, Mr. Clinesmith next invokes our Circuit's decision in *United States v. Cochran*, 109 F.3d 660 (10th Cir. 1997). Highly summarized, the *Cochran* defendant was the head of a municipal-bond-underwriting company. *Id.* at 662. The government charged defendant with wire fraud and honest-services wire fraud based on a transaction where the defendant received a $100,000 secret payment. *Id.* Defendant's company had arranged for a third-party to help a client refinance an existing obligation. *Id.* at 663. Defendant's company certified to the client that, other than the money the third party would pay to the client, the third party wouldn't pay any additional money to anyone. *Id.* Contrary to defendant's certification to his client, the third party paid defendant a $100,000 fee. *Id.* A jury convicted the *Cochran* defendant of wire fraud.

Our Circuit reversed the *Cochran* defendant's wire-fraud convictions because the government failed to show harm. It first noted that "it would give us great pause if a right to honest services is violated by every breach of contract or every misstatement made in the course of dealing." *Id.* at 667. And it held "that where actual harm exists as a natural and probable result of the scheme, fraudulent intent may be inferred." *Id.* at 668. But the Circuit held "that in the absence of actual or potential harm, evidence independent of the alleged scheme must be adduced to show fraudulent intent towards the alleged victims." *Id.* So, though the *Cochran* defendant had misrepresented to his client that the third party wouldn't pay an additional fee, this misrepresentation didn't cause the client any harm because the secret payment came from the third party. *Id.* at 669. And, importantly, the government had failed to adduce any harm evidence independent of the scheme—thus requiring reversal of the wire-fraud convictions. *Id.*

10

*Cochran* doesn't control here because it wasn't an employer/employee case. In *Cochran*, the victim sustained no harm from the defendant receiving a $100,000 payment from a third party. The defendant wasn't the victim's employee. Instead, the victim was a client of defendant's employer. But, here, the government alleges that Mr. Clinesmith breached a duty owed to *his employer*. He thus allegedly "defraud[ed] the employer of a lawful right." *Skilling*, 561 U.S. at 401 (quotation cleaned up). And so, the harm allegedly suffered by Honeywell suffices because Clinesmith "breached his allegiance to his employer by accepting . . . kickbacks in the course of his employment." *Id.* (quotation cleaned up).

At bottom, Mr. Clinesmith seeks to adduce evidence that he lacked any criminal intent to deprive Honeywell of economic value. Doc. 95 at 5. He insists that he and his co-defendant "intended for Honeywell to receive the precise gages requested at the most competitive prices." *Id.* at 6. But that doesn't matter. Economic loss isn't an element of honest-services wire fraud. *See Milovanovic*, 678 F.3d at 726–27. And the substance of the product Mr. Clinesmith and Mr. Mueller produced for Honeywell doesn't matter to that charge. What matters to honest-services wire fraud is how they got there—*i.e.*, did Mr. Clinesmith breach his duty to Honeywell, his employer, in the process by soliciting kickbacks and steering Honeywell work to MMT?

Mr. Clinesmith posits that evidence of faulty, deficient, or unusable gages "would surely be admissible to prove the defendant's criminal intent." Doc. 95 at 5. That's just wrong. Naturally, the court's ruling on this issue applies with equal force to the government. It can't use evidence of faulty gages produced by MMT to show that Mr. Clinesmith intended to cheat Honeywell out of his honest services.

In contrast to the gage quality issue this Order decides, the parties agree that evidence about Honeywell's gage *process* is relevant. Indeed, the government plans to offer evidence

11

about the Honeywell gage process—*i.e.* design, approval, purchase orders.  The court recognizes (as Mr. Clinesmith argues) that some of this evidence might touch on quality.  For example, only a quality gage could make it through the Honeywell process.  But, again, this case is about the process, not the substance of the gages.  So, any discussion about quality should be incidental.

The court thus concludes that evidence about the quality of the gages produced by Mr. Clinesmith, Mr. Mueller, and MMT is irrelevant to the charges of wire fraud and honest-services wire fraud.  The court also concludes that, even if the evidence qualified as relevant, it risks confusing the jury.  The viability and functionality of the gages is a complicated, technical topic.  Too much information on this topic would sidetrack jurors into thinking they must evaluate the substance of the products that the alleged scheme produced.  In light of these complications, the court concludes that, even if gage-quality evidence were relevant, it would nonetheless exclude the evidence under Fed. R. Evid. 403.

### III.     Conclusion

The court denies Mr. Clinesmith's Motion in Limine (Doc. 88).  And the court grants in part and denies in part the government's Motions in Limine (Doc. 89).  It withholds ruling on the government's sixth motion in limine topic, however, until it holds a *James* hearing.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Michael Grant Clinesmith's Motion in Limine (Doc. 88) is denied.

**IT IS FURTHER ORDERED THAT** the government's Omnibus Motion in Limine (Doc. 89) is granted in part and denied in part, with one topic reserved for a later ruling.

**IT IS SO ORDERED.**

Dated this 1st day of October, 2025, at Kansas City, Kansas.

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**