IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

              Plaintiff,

v.

MICHAEL GRANT CLINESMITH,

              Defendant.

Case No. 23-20063-01-DDC

**MEMORANDUM AND ORDER**

This matter comes before the court on defendant Michael Grant Clinesmith's oral motion for judgment of acquittal under Fed. R. Crim. P. 29. It's a thin motion; defendant never made any specific arguments for acquittal. Given this absence, the court only can treat the motion as a general one, one that merely challenges the sufficiency of the government's evidence for each element of the crimes for which the jury convicted defendant. As explained below, the court denies the motion.

I.      **Background**

The government charged defendant with one count of conspiracy to commit wire fraud and honest-services wire fraud and four counts of wire fraud and honest-services wire fraud. Doc. 1 at 9–12. Highly summarized, at trial, the government demonstrated a scheme between defendant and Mueller Machine and Tool (MMT) to defraud defendant's employer, Honeywell Federal Manufacturing & Technologies. Defendant used his position as a long-tenured gage engineer at Honeywell to steer valuable gage contracts to MMT, an outside supplier. Defendant told Honeywell that only MMT could build the complex gages. But defendant himself was

doing the work for MMT—secretly. More than 20 years ago, defendant and the former owner of MMT, Ray Mueller, had agreed that defendant would design gages for MMT, and MMT would use those designs to bid for Honeywell gage contracts. In exchange, defendant agreed to steer gage contracts from Honeywell to MMT. MMT compensated defendant well; he made more than one million dollars from this scheme over its course.

At the close of the government's evidence, defendant moved orally for a judgment of acquittal under Fed. R. Crim. P. 29. The court asked whether counsel would prefer to argue specifics or submit a filing later. Defense counsel expressed a preference for a filing and agreed to allow the court to reserve judgment on the motion. The court deferred ruling the motion, as allowed under Rule 29(b). The jury convicted defendant on all counts.

Post-trial, defendant never presented the promised filing, despite the court setting a briefing schedule, *see* Doc. 133. Without any specific argument, the court necessarily treats defendant's motion as a general motion, challenging only "the sufficiency of each essential element of the government's case." *United States v. Simpkins*, 90 F.4th 1312, 1317 (10th Cir. 2024) (quotation cleaned up). The court begins its analysis of this general motion with the governing legal standard, then turns to the sufficiency of the government's evidence for each count.

## II.     Legal Standard

To decide a Rule 29 sufficiency-of-the-evidence challenge, the court looks "at 'the evidence in the light most favorable to the government to determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt.'" *United States v. Tao*, 107 F.4th 1179, 1184 (10th Cir. 2024) (quoting *United States v. Johnson*, 821 F.3d 1194, 1201 (10th Cir. 2016)). In conducting its review, the court doesn't "decide credibility issues or reweigh the evidence." *Johnson*, 821 F.3d at 1201. "The only question is 'whether the

government's evidence, credited as true, suffices to establish the elements of the crime.'" *Id.* (quoting *United States v. Hutchinson*, 573 F.3d 1011, 1033 (10th Cir. 2009)). As specified in Rule 29, the court "decide[s] the motion on the basis of the evidence at the time the ruling was reserved"—here, at the end of the government's case-in-chief. Fed. R. Crim. P. 29(b).

### III.     Count 1

Count one charges defendant with a conspiracy to commit wire fraud and honest-services wire fraud, violating 18 U.S.C. § 1349. Doc. 1 at 9–11. Counts two through five charge defendant with carrying out that conspiracy—more on those charges later. To convict a defendant of conspiracy, the government must prove four elements beyond a reasonable doubt:

> (1) defendant reached an agreement with another person to (a) devise a scheme to defraud Honeywell of its money or property or (b) devise a scheme to deprive Honeywell of its right to the honest services of its employee, defendant, through kickbacks;
>
> (2) defendant knew the essential objective(s) of the conspiracy;
>
> (3) defendant knowingly and voluntarily participated in the conspiracy; and
>
> (4) the co-conspirators were interdependent.[1]

*See United States v. Hill*, 786 F.3d 1254, 1266 (10th Cir. 2015). The government's evidence easily meets each element.

In a recorded interview, defendant told investigators about the origins of the scheme: He met with the former owner of MMT, Ray Mueller, and offered to design work for MMT. They had a "handshake" deal. After defendant formed this relationship with MMT, his actions conformed with the original agreement. Defendant designed MMT's gages for them, and MMT

---

[1]     Other conspiracies, like those charged under 18 U.S.C. § 371, require proof of an overt act. *United States v. Martinez-Cruz*, 836 F.3d 1305, 1313 n.6 (10th Cir. 2016). But conspiracy to commit wire fire fraud doesn't require proof of an overt act. *United States v. Thornburgh*, 645 F.3d 1197, 1204 (10th Cir. 2011) (citing *Whitfield v. United States*, 543 U.S. 209, 219 (2005)).

submitted those gage designs to Honeywell in the hope that Honeywell would award MMT the gage contract. But defendant and MMT concealed material information from Honeywell. Though defendant designed MMT's gages, MMT never mentioned his role to Honeywell. Nor did defendant ever tell Honeywell, his employer, that he'd designed MMT's gages.

The government's evidence also demonstrated that defendant used his influence at Honeywell to steer gage contracts to MMT. Indeed, for years after the original agreement, Honeywell awarded contract after contract to MMT, and the evidence demonstrated that defendant told his Honeywell colleagues to do so. And, to put a bow on this evidence of a conspiracy, the government showed that MMT only paid defendant after Honeywell had paid MMT.

From this evidence, a reasonable jury could find that the government proved a conspiracy beyond a reasonable doubt. The government showed an agreement and that agreement's purpose: (a) to commit wire fraud by inducing Honeywell to award MMT gage contracts and, in the process, (b) deprive Honeywell of the honest services of its employee. And, given defendant's role in the conspiracy, the evidence demonstrated that defendant knew the conspiracy's objectives and participated knowingly and voluntarily. The evidence also demonstrated interdependency because defendant and his co-conspirators worked together for mutual benefit.

The court thus concludes that the government's evidence, viewed in the light most favorable to it, sufficed to prove count one beyond a reasonable doubt.

## IV.        Counts 2–5

Counts two through five charge defendant with both wire fraud, violating 18 U.S.C. § 1343, and honest-services wire fraud, violating 18 U.S.C. § 1346. Doc. 1 at 11–12. To convict a defendant of wire fraud, the government must show four elements:

> (1) defendant devised or intended to devise a scheme or artifice to defraud to secure money or property by means of false or fraudulent pretenses, representations, or promises;
>
> (2) defendant acted with specific intent to defraud;
>
> (3) defendant used or caused another person to use interstate or foreign wire communication facilities for the purpose of carrying out the scheme; and
>
> (4) the scheme employed false or fraudulent pretenses, representations, or promises that were material.

Tenth Circuit Pattern Criminal Jury Instruction § 2.57. Honest-services wire fraud under § 1346 provides that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. So, honest-services wire fraud is a type of wire fraud—just one with a different object of the scheme. And the jury convicted defendant of both wire fraud (depriving Honeywell of its money and property), and honest-services wire fraud (depriving Honeywell of its right to defendant's honest services). With this in mind, the court examines the sufficiency of the government's evidence for each element of wire fraud.

*First*, the scheme to defraud. The government presented evidence that defendant and his co-conspirators had devised a scheme to misrepresent MMT's gage-design capabilities to Honeywell. The conspirators lied to Honeywell about who was doing the work. Defendant designed the gages, not anyone at MMT. One MMT employee, Grant Becker, testified that MMT directed him to put his name on defendant's drawings. Defendant's co-defendant, Richard Mueller, confirmed this scheme. And defendant never told his employer, Honeywell, that he had a financial interest in the contracts Honeywell had awarded to MMT. Indeed, defendant annually certified to Honeywell that he had no financial interest whatsoever in an outside vendor. Defendant and MMT did all this to convince Honeywell to award MMT with gage contracts that

Honeywell otherwise wouldn't have awarded to MMT. A reasonable jury could conclude that this evidence demonstrates a scheme to secure Honeywell gage contracts through false or fraudulent representations. That's wire fraud. *See, e.g.*, *Kousisis v. United States*, 605 U.S. 114, 123 (2025) (explaining fraudulent-inducement theory of wire fraud).

For honest-services wire fraud, the scheme included depriving Honeywell of defendant's honest services. MMT paid defendant and, in exchange, he shared Honeywell's inside information with MMT—*i.e.*, buyout lists, internal budgets, and nearly completed designs. Defendant also provided MMT with favorable treatment in his capacity at Honeywell, steering gage contract work to MMT and approving MMT's quotes (quotes that often were his own). And he did so to give MMT an advantage over other competitors, ensuring that Honeywell would award MMT the contracts and defendant would get paid. MMT, for its part, hid defendant's involvement in this process. In sum, the government adduced sufficient evidence for a jury to conclude that defendant breached his duty to Honeywell "by accepting bribes or kickbacks in the course of his employment." *Skilling v. United States*, 561 U.S. 358, 401 (2010) (quotation cleaned up).

*Second*, the specific intent to defraud. The government presented ample evidence on this element as well. In an interview with Department of Energy agents, defendant himself said, "Well, . . . those gages . . . typically I do the design on those for Mueller. I didn't tell anybody. . . . [I]t's not right according to Honeywell policies. . . . I didn't tell them. I didn't tell a soul I was doing them other than Mueller." Gov. Ex. 2. Defendant used a home email address to communicate with MMT, further demonstrating that defendant hid his MMT connection from Honeywell. Mr. Mueller testified that defendant knew that Mr. Becker was putting his initial on defendant's designs. And defendant emailed MMT and told Mr. Becker, "Please send the design

6

documents to me at work as well. Make no reference to this email." Gov. Ex. 1100. Defendant also told Honeywell that only MMT could do complex gage work but, in reality, MMT couldn't do the complex gage work without him. What's more, defendant lied on his annual conflict of interest form. Annually, he failed to disclose his relationship with MMT. A rational juror could conclude that the government shouldered its burden to demonstrate beyond a reasonable doubt that defendant acted with the specific intent to defraud.

*Third*, the use of interstate wires. The government satisfied this element by adducing the emails defendant sent from his home email address to MMT in Missouri had moved between states. It adduced testimony of a Charter Communications representative who testified that each email had to travel across state lines from defendant's home in Kansas to servers in either Colorado or Pennsylvania. And each email furthered the scheme. In the email for count two, defendant attached a buyout list that included his fee and a price for a gage. In the email for count three, defendant provided design costs for a request for production and promised to provide more information for MMT to use when quoting the gage to Honeywell. In the email for count four, defendant attached an invoice and request payment for his gage-design work. And in the email for count five, defendant attached another invoice.

*Last*, the government had to show that the defendant made material misrepresentations. It did so. "A misrepresentation is material if it has a natural tendency to influence or is capable of influencing the decision maker." *United States v. Cochran*, 109 F.3d 660, 667 n.3 (10th Cir. 1997). Witnesses from Honeywell testified that had they known MMT couldn't do the work, that MMT wasn't doing the work, and that defendant was directing contracts to MMT on which he stood to profit, they wouldn't have sent business to MMT. Indeed, when Honeywell found out about the relationship between defendant and MMT, it fired defendant immediately.

In sum, the government presented sufficient evidence to convict defendant of wire fraud and honest-services wire fraud.

## V.     Conclusion

Viewed in the light most favorable to the government, the evidence suffices for a reasonable jury to convict defendant of all five counts. The court thus denies his oral motion for acquittal.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Michael Grant Clinesmith's motion for acquittal is denied.

**IT IS SO ORDERED.**

**Dated this 8th day of January, 2026, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**